

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

July 30, 1963

Honorable Henry Wade
District Attorney
Dallas County
Dallas, Texas

Opinion No. C-117

Re: Whether, in counties
which have adopted
voting machines, use of
the machines is mandatory
in primary elections, and
related question.

Dear Sir:

For a number of years, voting machines have been adopted for use in elections in Dallas County, as provided in Section 3 of Article 7.14 of Vernon's Texas Election Code. You have requested us to render an opinion on the following questions:

"1. Is it mandatory for both parties (Democratic and Republican) in a primary election to use voting machines?

"2. If it is mandatory to use voting machines, is it mandatory for Dallas County to furnish the voting machines?"

Section 3 of Article 7.14, supra, as enacted in 1951, read as follows:

"Sec. 3. Adoption by Commissioners Court. The Commissioners Court of any county in the State of Texas may adopt for use in elections and primary elections in at least three (3) of the larger voting precincts in voting strength in said county, any kind of voting machine approved by the Secretary of State and may adopt such voting machine at any time for use in such additional voting precincts in the county as it may deem advisable, and thereupon such voting machine shall be used at any and all elections and primary elections, municipal, county, district or State held in that county or any part thereof, designated for voting, registering

-581-

and counting votes cast at such elections
and primary elections, all school and bond
elections also shall be conducted by the
use of voting machines in those counties
or parts thereof where such machines have
been adopted, where the law specifically
makes their use obligatory."

This statute was amended at the regular session of the 58th Legislature this year, by the enactment of Senate Bill 61, which will take effect on August 23, 1963. The amendments to Article 7.14 were part of the recommendations of the Election Law Study Committee created by S.C.R. No. 30 of the 57th Legislature. The records of the committee show that it considered four suggestions for the amendment of Section 3 of Article 7.14, as follows: (1) clarify whether, or when, use of voting machines is mandatory in "school and bond elections"; (2) provide a solution for the situation where more than one election is to be held on the same day or within the period that the machines are required to remain locked after an election, and the county does not own enough machines for both elections; (3) in elections for which voting machines are not mandatory, provide that the election may be conducted on voting machines, at the option of the authority holding the election, if the county is able to furnish the machines; (4) clarify the authority of the commissioners court to discontinue use of voting machines after they have been adopted.

The problem noted in the second suggestion had arisen most frequently during the past decade under the provision making use of voting machines mandatory in primary elections, in the years when both the Democratic Party and the Republican Party were holding primaries. With this background, the committee recommended the following amendment, which was passed by the Legislature without change:

"Sec. 3. Adoption by commissioners court. The Commissioners Court of any county in the state may adopt for use in elections in at least three of the larger election precincts in voting strength in the county, any kind of voting machine approved by the Secretary of State, and may adopt such voting machine at any time for use in such additional election precincts in the county as it may deem advisable. The court at any time may rescind or modify its previous order or orders adopting voting machines, and may discontinue use of voting machines altogether, but use of voting machines shall be retained in at least three

of the larger election precincts if retained
for use in any part of the county.

"Voting machines shall be used at the bien-
nial general elections for state and county offi-
cers in all precincts in which they have been
adopted by the commissioners court. In all other
elections, general, special, or primary, the au-
thority holding the election shall determine with-
in its discretion whether the voting in such
precincts for the particular election shall be
by use of voting machines or paper ballots, and
may provide for use of either voting machines or
paper ballots in any or all of the precincts for
which voting machines have been adopted. The
determination shall be made by the commissioners
court in elections held at the expense of the
county, by the governing body of the municipal-
ity or political subdivision in elections held
by municipalities or other political subdivisions,
and by the county executive committee of the po-
litical party in primary elections."

Under the clear provisions of Section 3 as amended,
use of voting machines is not mandatory in primary elections.
Accordingly, as of the effective date of the amendment your
first question is answered in the negative.

Your second question is whether it is mandatory for
Dallas County to furnish the voting machines for the primary
elections if use of the machines is mandatory. From your brief
it is apparent that you are also interested in whether it is
the mandatory duty of a county to provide a sufficient number
of voting machines to comply with the request of all political
parties for use in the primary elections if their use is not
mandatory. This is the question which we shall answer.

Since its original enactment in 1930, it has always
been within the contemplation of the Voting Machine Law that
the county would permit its machines to be used by other polit-
ical subdivisions and political parties in their elections.
See Secs. 5, 6, 17 and 21 of Art. 7.14. Section 6 provides:

"Sec. 6. Payment for Voting Machines.
The County Commissioners Court shall provide
for the payment of voting machines to be used
in such county in such manner as the Court
may deem for the best interest of the county.
. . . Such voting machines shall be the pro-
perty of the county paying for same and/or

> renting same, subject to the terms of
> the rental contract, and when used in
> any election or primary election, the
> county is not charged by law with the
> holding of, such machines shall be
> leased to the authorities charged with
> holding such election or primary elec-
> tion, and payment shall be received by
> the county at such lease price per ma-
> chine for each election day such ma-
> chines are used in an election as the
> Commissioners Court shall fix, but not
> to exceed ten per cent (10%) of the
> original cost of such voting machine,
> as may be required to hold each elec-
> tion or primary election. . . ."

This section regulates the terms on which the county may permit use of its machines but does not make it mandatory for the county to furnish the machines. Section 5 of Article 7.14 pre-scribes the duty of the county to provide machines after adoption. It requires the commissioners court to provide "one or more approved voting machines in completed working order" for each precinct designated for their use. In the light of Section 3, as amended, it is the duty of the commissioners court to provide the number of machines which will be required for the efficient and orderly conduct of the general election in the precincts designated for their use. We do not find any provision in the law which requires the county to provide machines in excess of that number.

The problem of having an inadequate number of machines to run two elections on the same day was squarely before the committee which drafted the amendments to Article 7.14. It undertook to solve the problem by providing that their use would be discretionary rather than mandatory in all elections except the general election for state and county officers. This would be no solution at all if the discretion lodged in the authorities holding the elections could result in forcing the county to provide machines which it did not have. In the light of its background, the only reasonable in-terpretation of the amendment is that the discretion in de-ciding to use voting machines will be limited by the avail-ability of machines. We are of the opinion that the county is not required to furnish voting machines to a political party beyond the number which the county will have available for use by the party on the day of the primary election.

## SUMMARY

In counties which have adopted voting machines, use of the machines will not be mandatory in primary elections after August 23, 1963, the effective date of a recent amendment to Section 3 of Article 7.14, Vernon's Texas Election Code.

Where a political party has decided to use voting machines in its primary election, the county is not required to furnish machines for use in the primary in excess of the number of machines which it will have avilable on the day of the election.

Yours very truly,

WAGGONER CARR
Attorney General

By *Mary K. Wall*

Mary K. Wall
Assistant


MKW:jh

APPROVED

OPINION COMMITTEE
W. V. Geppert, Chairman
Jerry Brock
Nicholas A. Irsfeld
Paul Phy
Joseph Trimble

APPROVED FOR THE ATTORNEY GENERAL
By: Stanton Stone